## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISING LLC, a Delaware Limited Liability Company; and DD IP HOLDER LLC, a Delaware Limited Liability Company;<br><br>*Plaintiffs,*<br><br>v.<br><br>DRIFTWAY DONUTS, LLC, a Massachusetts Limited Liability Company; MARIE G. REIS, an individual, HELDER GARCIA, an individual; and IVO GARCIA, an individual;<br><br>*Defendants.* | Case No. 1:19-cv-11830 |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from Defendants' violation of one of their Franchise Agreements with Plaintiffs. Defendants breached the agreement by repeatedly violating Dunkin's operational standards relating to health, food safety, and sanitation at their former Dunkin' Donuts shop. Defendants received multiple written notices identifying their defaults and demanding that they be promptly cured but they have failed to remedy the situation. Indeed, recent inspections of Defendants' shop revealed the existence of an insect infestation, mold in the ice machine, filthy food preparation equipment and surfaces, expired food products, utensils not properly cleaned and maintained, and improper hygiene practices by employees, to name but a few of the

1

violations identified.   Based on these repeated violations, Plaintiffs recently sent Defendants a Notice of Default and Termination terminating their Franchise Agreement.   Moreover, Defendants' continued use and enjoyment of Plaintiffs' trademarks, trade names, and trade dress after the effective date of the termination of the Franchise Agreement is a violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  Plaintiffs seek monetary, injunctive, and other relief against Defendant for the reasons set forth below.

## PARTIES

1.     Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  It is engaged in the business of franchising independent businesspersons to operate Dunkin' shops throughout the United States.  Dunkin' franchisees are licensed to use the Dunkin' trade names, service marks, and trademarks and to operate under the Dunkin' system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2.     Plaintiff DD IP Holder LLC, Dunkin's wholly owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DD IP Holder LLC is the owner of the trademarks, service marks, and trade names "Dunkin'" and "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchising LLC and DD IP Holder LLC are hereinafter collectively referred to as "Dunkin'."

3.     DB Master Finance LLC, a Delaware limited liability company, is the sole

1602664.1

member of Plaintiffs DD IP Holder LLC.  In turn, the sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company.  The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company.  The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company.  The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company.  The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company.  The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation.  The principal place of business of all the foregoing entities is at Canton, Massachusetts.

4.      The sole member of Plaintiff Dunkin' Donuts Franchising LLC is DB Franchising Holding Company LLC, which is a Delaware limited liability company with its principal place of business at Canton, Massachusetts.  In turn the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC.  As stated above, DB Master Finance LLC is a Delaware limited liability company with its principal place of business in Canton, Massachusetts.

5.      Defendant Driftway Donuts, LLC is a Massachusetts limited liability company with its principal place of business in Massachusetts.  Defendant Driftway Donuts was the owner of a Dunkin' Donuts shop located at 32 Driftway, Scituate, Massachusetts, pursuant to a Franchise Agreement dated June 24, 2013.

6.      Defendant Marie G. Reis is a natural person and, upon information and belief, a citizen and resident of the State of Florida.  Defendant Marie G. Reis is a member of the

Driftway Donuts and personally guaranteed its obligations under the Franchise Agreement pursuant to executed personal guarantees.

7.      Defendant Helder Garcia is a natural person and, upon information and belief, a citizen and a resident of the Commonwealth of Massachusetts. Defendant Helder Garcia is a member of the Driftway Donuts and personally guaranteed its obligations under the Franchise Agreement pursuant to executed personal guarantees.

8.      Defendant Ivo Garcia is a natural person and, upon information and belief, a citizen and resident of New York. Defendant Ivo Garcia is a member of the Driftway Donuts and personally guaranteed its obligations under the Franchise Agreement pursuant to executed personal guarantees.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act, 15 U.S. C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1338, & 1367(a).

10.     This Court has *in personam* jurisdiction over Defendants because they conduct business in this district, they are residents of this district, and/or the events giving rise to Plaintiffs' claims occurred in this district.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and/or a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## BACKGROUND FACTS

### The Dunkin' Donuts System

12.     Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

13.     DD IP Holder LLC is the owner of the trademarks, service marks, and trade names "Dunkin'" and "Dunkin' Donuts," and related marks (referred to hereinafter as the

4

"Dunkin' Marks").  Dunkin' has the exclusive license to use and to license others to use the Dunkin' Marks and has, along with its predecessors, used them continuously since approximately 1960 to identify its donut shops, and the donuts, pastries, coffee, and other products associated with those shops.

14.     DD IP Holder LLC owns numerous federal registrations for the mark "Dunkin' Donuts," and related marks.  Among those registrations are Registration Nos. 748,901; 1,148,165; 2,751,007; and 5,717,806.  Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

15.     The Dunkin' Marks are distinctive and famous and have acquired secondary meaning.

16.     The Dunkin' Marks are utilized in interstate commerce.

17.     The Dunkin' Marks have been very widely advertised and promoted by Dunkin' Donuts over the years.   Since 1971, Dunkin' and its franchisees spent over $2.5 billion on advertising and promoting the Dunkin' Marks.

18.     Dunkin' franchisees currently operate more than 12,000 restaurants worldwide, including over 9,500 restaurants in the United States.   Dunkin' shops feature Dunkin's distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style.  In the more than sixty years since the Dunkin' system began, millions of consumers have been served in Dunkin' shops.

19.     As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Marks, the public has come to know and recognize the Dunkin' Marks, and to associate them exclusively with products and services offered by Dunkin' and its franchisees. The Dunkin' Marks are among the best and most widely known trademarks in the United States

1602664.1

today, and are assets of inestimable value to Dunkin', representing and embodying Dunkin's considerable goodwill and favorable reputation.

## Obligations Under the Franchise Agreement

20.     Under the Franchise Agreement, Defendants agreed to use the Dunkin' Marks, including but not limited to, its trademarks, service marks, logos, emblems, trade dress and other indicia of origin, only in the manner and to the extent specifically licensed by the Franchise Agreement. (Franchise Agreement § 9.0).

21.     Pursuant to the Franchise Agreement, Dunkin' has the right to establish "Standards" for various aspects of the System that include the . . . quality of the operating systems of restaurants and other concepts; the products that are sold; . . . and all other things affecting the experience of consumers who patronize our System." (Franchise Agreement § 2.2).

22.     Defendants also agreed that "[a]s franchisee, [they] have the right and responsibility to exercise day-to-day control over [their] franchised business to meet those Standards. . . ." (*Id.* § 2.3.)

23.     Pursuant to the Franchise Agreement, Defendants agreed to operate their franchise in accordance with Dunkin's operational Standards, including but not limited to complying with all of Dunkin's requirements relating to health, food safety, and sanitation. (*Id.* §§ 7.0, 7.0.8.)

24.     Defendants agreed to cure a violation of "any . . . Standard relating to health, sanitation or safety . . . within twenty-four hours after delivery of notice of default to you in our then-standard form or forms of communication." (*Id.* § 14.1.3.)

25.     Defendants also agreed that Dunkin' may terminate the Franchise Agreement without providing them an opportunity to cure if they default under the Franchise Agreement and

6

they have received three (3) or more previous notices to cure for the same or substantially similar default (whether or not they have cured the default), within the immediately preceding twelve-month period. (*Id.* § 14.2.)

26.    Defendants agreed that upon the termination of the Franchise Agreement, among other things, their right to use the Dunkin' Marks and system would cease, and that they would immediately cease to operate the franchised business, cease to use the proprietary marks and system, and would not, directly or indirectly, hold themselves out as present or former franchisees of Dunkin'. (*Id.* §§ 14.6, 14.7.2, 14.7.3).

27.    Defendants also agreed that they would promptly pay Plaintiffs all sums owing and any damages, interest, costs, and expenses, including reasonable attorneys' fees, incurred as a result of Defendants' defaults. (*Id.* § 14.4.4.)

### Defendants' Defaults

28.    Defendants breached the Franchise Agreement by committing the conduct described below.

29.    Over the years, Defendants have failed numerous inspections conducted at their shop relating to health, food safety, and sanitation. Most recently, on May 21, 2019, June 17, 2019, and July 3, 2019, Defendants' shops were inspected by Dunkin' personnel. The inspections revealed numerous violations of Dunkin's standards for health, food safety, and sanitation. Each inspection resulted in a failing grade.

30.    On May 30, 2019, June 18, 2019, and July 9, 2019, Defendants were sent Notices to Cure notifying them that they were in default of their Franchise Agreement based on their failure to comply with Dunkin's standards. The Notices requested that they cure the violations identified on the inspection forms they had been provided within 24 hours, per the terms of the Franchise Agreement. In each instance Defendants failed to cure the violations.

7

31.     On August 20, 2019, Defendants' shops were inspected and once again found to be in default of Dunkin's standards.  For example, the inspection revealed the existence of dirty food preparation equipment and surfaces, filthy floors, walls and counters, the three-compartment sink was not in proper use, improper hygiene practices by employees, and temperature logs for food products not being maintained, to name but a few of the violations identified.

32.     Accordingly, pursuant to the applicable provisions of the Franchise Agreement, on August 26, 2019, Dunkin' sent Defendant a Notice of Default and Termination (the "Notice of Termination").  The Notice of Termination terminated the Franchise Agreement, stated the grounds for termination, and requested that Defendants immediately comply with their post-termination obligations as set forth in the Franchise Agreement.

33.     Notwithstanding Defendants' breaches of the Franchise Agreement, the resulting termination of the Franchise Agreement, and the Notice of Termination, the Defendants have continued to operate the shop using the Dunkin' system and Dunkin's Marks without having any right or license to do so.

**COUNT I**
**(Breach of Contract - Breach of Franchise Agreement)**

34.     The allegations of paragraphs 1 through 33 are hereby incorporated by reference.

35.     Dunkin' has performed all of its obligations under the Franchise Agreement.

36.     Defendants' conduct described herein constitutes breaches of the above-described contractual obligations contained in the Franchise Agreement.

37.     These breaches constitute good cause for terminating the Franchise Agreement.

38.     As a result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an

1602664.1

amount that has yet to be determined.

## COUNT II
### (Trademark Infringement)

39.     The allegations of paragraphs 1 through 38 are hereby incorporated by reference.

40.     The use in commerce of the Dunkin' Marks and trade names by Defendants outside the scope of the Franchise Agreement and without Dunkin's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendant are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin'. Such unauthorized use of Dunkin's Marks infringes their exclusive rights in their trademarks under Section 32 of the Lanham Act, 15 U.S. C. § 1114 and applicable state law.

41.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

42.     As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Unfair Competition)

43.     The allegations of paragraphs 1 through 42 are hereby incorporated by reference.

44.     The use in commerce of Dunkin's Marks by Defendants outside the scope of the Franchise Agreement and without the consent of Dunkin' is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Dunkin's Marks violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

45.     The acts of Defendants were and are being done knowingly and intentionally to

1602664.1

cause confusion, or to cause mistake, or to deceive.

46. As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT IV**
**(Trade Dress Infringement)**

47. The allegations of paragraphs 1 through 46 are hereby incorporated by reference.

48. Defendants' shop is identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin'" and "Dunkin' Donuts" appear in the same lettering style and in the same distinctive color scheme as Dunkin' uses for the donut shops operated by their licensees.

49. The use by Defendants of trade dress that is identical to the Dunkin' trade dress outside the scope of the Franchise Agreement constitutes a false designation of the origin of Defendants' shop, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shop with the Dunkin' shops operated by Dunkin's licensees. Such adoption of the Dunkin' trade dress violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

50. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

51. As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1602664.1

a.      Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreement, and constitutes good cause for terminating that agreement;

b.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreement;

c.      Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreement by Defendants;

d.      Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

e.      Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreement and Option to Assume Lease Agreement, and to take all steps required to transfer their leasehold interests in the shop to Plaintiffs or their designee(s) in the event that Plaintiffs elect to exercise any rights they or any of their affiliates or subsidiaries might have in such interests;

f.      Award Plaintiffs prejudgment interest in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

g.      Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreement and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

h.      Award Plaintiffs such other relief as this Court may deem just and proper.

1602664.1

Respectfully submitted,

*/s/ John A. Donovan III*

John A. Donovan  III, BBO # 631110
Michael J. Maxey, BBO #694719
Sloane and Walsh, LLP
One Center Plaza
Boston, Massachusetts 02108
Telephone:  (617) 523-6010
Facsimile: (617) 227-0927
jdonovan@sloanewalsh.com
mmaxey@sloanewalsh.com


David Worthen, *pro hac vice to be filed*
**QUARLES & BRADY LLP**
1701 Pennsylvania Ave., NW
Suite 700
Washington, DC 20006
Telephone:  (202) 372-9511
Facsimile:  (202) 372-9582
David.Worthen@quarles.com
Jonathan.Labukas@quarles.com

Dated: August 27, 2019